BENJAMIN *et al.* v. METROPOLITAN STREET RAILWAY COMPANY, *Appellant.*

### Division One, March 10, 1896.

1. **Negligence:** SIDEWALK: DEFECTIVE MANHOLE.   A person permitted by an ordinance of the city to maintain manholes in the sidewalk in front of his premises for the reception of coal must use reasonable care to keep them in a safe condition; nor can he relieve himself from such duty by imposing it on another.

2. ——: ——: ——: INDEPENDENT CONTRACTOR.   Where a coal company, as an independent contractor, delivers coal in the manhole, the property owner is not responsible for the company's negligence in performing its contract.

3. ——: ——: ——: ——.   Such exemption, however, continues only while the contractor is engaged in the performance of his contract.

4. ——: ——: ——: ——. Where such coal company after delivering the coal fails to properly replace the manhole cover, it is for the jury to say whether notice could be imputed to the owner of the premises so as to render him liable for an accident to a pedestrian occurring fifteen minutes later.

5. Practice: DEPOSITION: NONRESIDENT WITNESS. The fact that a nonresident witness is within the jurisdiction of the court's process at the time the cause is tried will not prevent the reading of his deposition previously taken, if the witness is not actually present in court.

6. ——: ——: ——: HARMLESS ERROR. Error in excluding the deposition of a nonresident witness after it was read because of his subsequent appearance in court is not sufficient ground for reversal, where the complaining party was permitted to cross-examine the witness and obtained from him a full confirmation of the evidence given in the deposition.

7. ——: EXPERT WITNESSES: JURORS. The evidence of expert witnesses is not admissible unless it is clear that the jurors themselves, from want of experience or knowledge of the subject, are not capable of drawing correct conclusions from the facts proved.

8. ——: INSTRUCTIONS: HARMLESS ERROR. The giving of abstract instructions, though improper, will not warrant a reversal unless they are clearly misleading.

9. Negligence: CONCURRING ACTS OF DEFENDANT AND THIRD PERSON. Where, in an action for damages resulting from defendant's negligence, it appears that a single act caused the injury and that the damages are inseparable, the fact that another person concurred in producing the injury is immaterial.

10. Practice: INSTRUCTIONS: HARMLESS ERROR. A refusal, in a suit for personal injuries, to caution the jury against determining the amount of a verdict by lot is not reversible error, especially in the absence of any complaint as to the amount of the verdict.

*Appeal from Jackson Circuit Court.*—HON. JAMES GIBSON, Judge.

AFFIRMED.

*James Black* and *Pratt, Ferry & Hagerman* for appellant.

(1) There was error in overruling the motion to quash the panel of jurors drawn under the act of

April 1, 1891. Said act is unconstitutional in that it violates section 53, article 4, of the constitution. *State v. Kring*, 74 Mo. 612; *State ex rel. v. Miller*, 100 Mo. 439; *State ex rel. Richards v. Hammer*, 42 N. J. L. 436. (2) The negligence, if any, and the cause of the injury was the act of Seymore, for which the coal company and not this defendant is liable because, under the facts, Seymore was not the servant of defendant. *Bennett v. Truebody*, 66 Cal. 509; *Clapp v. Kemp*, 122 Mass. 481; *McCullough v. Sherman*, 105 Pa. St. 169; *Fuller v. Bank*, 15 Fed. Rep. 875; *Sweeney v. Murphy*, 32 La. Ann. 628; *Stevens v. Armstrong*, 6 N. Y. 435; *Schermerhorn v. Gas Co.*, 5 Daly, 144; *Larow v. Clute*, 14 N. Y. Supp. 616; *Sawyer v. Martins*, 25 Ill. App. 521; *DeForest v. Wright*, 2 Mich. 368; *Kellogg v. Payne*, 21 Iowa, 575; *Linton v. Smith*, 8 Gray, 147; *Wood v. Cobb*, 13 Allen, 58; *King v. Railroad*, 66 N. Y. 181. (3) More than this, the coal company was an independent contractor, which excuses and relieves the defendant. *Bennett v. Truebody*, 66 Cal. 509; *McKinley v. Railroad*, 40 Mo. App. 449; *Barry v. St. Louis*, 17 Mo. 121; *Clark v. Railroad*, 36 Mo. 202; *Blumb v. City of Kansas*, 84 Mo. 112. (4) The true test of defendant's liability, if any, under the facts in this case, was negligence in failing to discover that Seymore left the coal cover out of place. *Lampert v. Gas Co.*, 14 Mo. App. 376; *Kirkpatrick v. Knapp & Co.*, 28 Mo. App. 428; *Grogan v. Foundry Co.*, 87 Mo. 321; *Bennett v. Truebody*, 66 Cal. 509; *Clapp v. Kemp*, 122 Mass. 481; *Daniel v. Potter*, 4 Car. & P. 262; *Harrison v. Collins*, 86 Pa. St. 153; *Doherty v. Waltham*, 4 Gray, 596; *Fisher v. Thirkell*, 21 Mich. 1; *Clark v. Fry*, 8 Ohio, 358; Cooley on Torts [1 Ed.], 626, 627. (5) Since the time the coal cover was displaced before the accident could not have exceeded fifteen minutes, there could in law have been no negligence in failing

to discover such displacement; the time was too short. *Lampert v. Gas Co.*, 14 Mo. App. 376; *Harrison v. Collins*, 86 Pa. St. 153; *Klapp v. Milwaukee*, 53 Wis. 196; *White v. Gloversville*, 12 Hun, 302; *Sheel v. Appleton*, 49 Wis. 125; *Blakely v. Fry*, 18 Hun, 157; *Muller v. Newburgh*, 32 Hun, 24; *Sikes v. Manchester*, 59 Iowa, 36. (6) The deposition of Frank Seymore was erroneously excluded. R. S. 1889, sec. 4461; *Frink v. Potter*, 17 Ill. 406; *Bradley v. Geiselman*, 17 Ill. 572. (7) Whether a certain portion of the walk was safe or dangerous was not for the witnesses to say, even though they were experts. *Griffin v. Willow*, 43 Wis. 509; *Koons v. Railroad*, 65 Mo. 597; *Eubank v. Edina*, 88 Mo. 655; *Gutridge v. Railroad*, 94 Mo. 472; *King v. Railroad*, 98 Mo. 240; *Naughton v. Stagg*, 4 Mo. App. 271; *Reid v. Ins. Co.*, 58 Mo. 521; *Bills v. Ottumwa*, 35 Iowa, 109; *Hambleton v. Railroad*, 36 Iowa, 31; *Hughes v. Muscatine County*, 44 Iowa, 672; *McDonald v. State*, 27 N. E. Rep. 358; *Ivory v. Deer Park*, 22 N. E. Rep. (N. Y.) 1080; *Bailey v. Railroad*, 8 N. Y. Supp. 780; *Bohr v. Neuneschorander*, 22 N. E. Rep. (Ind.) 416; *DeBerry v. Railroad*, 6 S. E. Rep. (N. C.) 723; *Yeaw v. Williams*, 15 R. I. 20; *Kold v. Sandwich Enterprise Co.*, 36 Ill. App. 419; *Lincoln v. Barry*, 5 Cush. 590; *Ryerson v. Abingdon*, 102 Mass. 526; *Kelley v. Fond du Lac*, 31 Wis. 179; *Montgomery v. Scott*, 34 Wis. 338. (8) Whether an appliance is carefully or carelessly constructed can not be submitted to the witnesses. *Buxton v. Somerset Potters' Works*, 121 Mass. 446; *Mellor v. Utica*, 48 Wis. 457; *Grippen v. Town of Wilson*, 43 Wis. 509; *Hopkins v. Railroad*, 78 Ill. 32; *Railroad v. Ryals*, 11 S. E. Rep. (Ga.) 499.

*Scarritt, Griffith & Jones* for respondents.

(1) Appellant's motion to quash the panel of jurors drawn under the act of April 1, 1891, was prop-

erly overruled. The act is not in violation of either section 53, article 4, or section 28, article 2, of the state constitution. *Dunne v. Cable R'y Co.*, 32 S. W. Rep. (Mo.) 641; *Coombs Com. Co. v. Block*, 32 S. W. Rep. (Mo.) 1139; *State v. Welsor*, 117 Mo. 570. (2) The jury found as a fact under proper instructions of the court that the defendant's negligence was the cause of the plaintiff's injuries, and it requires no citation of authorities to show that appellate courts will not weigh the evidence in a case of this kind, if there is evidence to support the finding of the jury. (3) The fact that the careless act of an irresponsible driver of a coal wagon may have concurred in causing plaintiff's injury does not relieve the defendant from responsibility for its negligence. The concurrent negligence of a third person (even though such a fact has been proved and in this case it has not) would constitute no defense to this suit. *Nagel v. Railroad*, 75 Mo. 661; *Yocum v Trenton*, 20 Mo. App. 489; *Becke v. Railroad*, 102 Mo. 544; *Boggs v. Railroad*, 18 Mo. App. 275; *Union, etc., Co. v. Schacklet*, 10 N. E. Rep. (Ill.) 899; *Kuttner v. Railroad*, 29 Mo. App. 502; *Little v. Hackett*, 116 U. S. 366; *Dickson v. Railroad*, 104 Mo. 500; *Kincaid v. Railroad*, 62 Mo. App. 365; *Waller v. Railroad*, 59 Mo. App. 410; *Musick v. Dold Packing Co.*, 58 Mo. App. 322; *Haney v. City of Kansas*, 94 Mo. 334. (4) The negligence charged, as has before been stated, was defective construction; hence, notice to or knowledge on the part of defendant of the defective coal hole is not essential to recovery. *Barr v. Kansas City*, 105 Mo. 550; *Frank v. St. Louis*, 110 Mo. 522; *Hall v. Railroad*, 74 Mo. 298; *Keitel v. Cable R'y Co.*, 28 Mo. App. 657; *Dickson v. Hollister*, 16 Atl. Rep. 484. (5) It was not error to exclude the depositions of Frank Seymore, he being present in the court room while the trial was going on. R. S. 1889, sec. 4461;

*Schmitz v. Railroad*, 119 Mo. 271; *Schmitz v. Railroad*, 46 Mo. App. 391; *Carter v. Prior*, 8 Mo. App. 577; affirmed by supreme court in 78 Mo. 222; *Chapman v. Kerr*, 80 Mo. 162; *Kitchen v. Railroad*, 59 Mo. 514. (6) "The subject concerning which the witness is to testify as an expert is one which must be determined solely by the court." Rogers on Expert Testimony [2 Ed.], 27; *Thompson v. Ish*, 99 Mo. 160; *Benjamin v. Railroad*, 50 Mo. App. 608; *Dillard v. State*, 58 Miss. 368; *Perkins v. Stickney*, 132 Mass. 218.

MACFARLANE, J.—Plaintiff obtained judgment in the circuit court for $2,000 against defendant, as damages for injuries received by reason of falling into a scuttle hole maintained by it in the public sidewalk adjacent to its property in Kansas City. An appeal was taken to the Kansas City court of appeals by which the cause was transferred to this court for the reason that the constitutionality of the Kansas City jury law was involved.

Defendant operated a street railroad in Kansas City, and maintained its power house on the corner of Twelfth and Charlotte streets. The basement of the building was used for storing coal used in its business. An excavation extended out under the sidewalk of Charlotte street, and coal was unloaded into the basement by means of four scuttle holes in the sidewalk, from which chutes carried it into the basement. Defendant had provided and used iron casting to cover these holes when not open for the purpose of storing coal.

On the seventh day of February, 1890, plaintiff Mrs. Benjamin, while walking along the sidewalk upon said street, stepped on the cover of one of these scuttle holes, which turned and slipped out of place, by reason of which her foot and leg went into the hole, she was

thrown down and received severe injuries to her foot, leg, and arm.

The petition charged negligence in permitting the scuttle hole "to remain at the time herein complained of in an unsafe, insecure, open, unfastened, defective," condition. That "the scuttle and cover therefor were not of the latest, best, and most approved pattern or design for the safety of pedestrians passing over the same, but which scuttle was about two feet in diameter, and the cover thereof rested on an arm or shoulder of only about one half inch in width, the bottom surface of which cover extended only about one half an inch below the top surface of the sidewalk, and which said cover was not secured in place or fastened down in any way; through which said scuttle the said defendant caused to be carelessly and negligently poured or dumped great quantities of soft or bituminous coal, which said scuttle and cover plaintiffs state was constructed by the defendant for the purpose for which it was then being used, not of the latest, best, and most approved pattern or design, but in a careless and negligent manner, and was by said defendant carelessly and negligently suffered to be and remain at said time in an unsafe, open, unfastened, insecure, and dangerous condition; and that said defendant carelessly and negligently permitted the shoulder or rim on which the cover to said scuttle rested to become covered and filled up to the level of the sidewalk with dust and dirt and fragments of coal at the time herein complained of, so that the same was then, and for a long time prior thereto had been, in an unsafe, insecure, and dangerous condition."

Defendant by answer denied generally the allegations of the petition and pleaded specially contributory negligence.

The evidence showed that the Keith & Perry Coal
Company had a contract with defendant to furnish all
the coal necessary to its business.    That the coal was
hauled in wagons by the employees of the contractors
to the power house and unloaded through these scuttle
holes by them.    Defendant gave no directions to the
contractor in respect to the manner of unloading the
coal and retained no control over them or their em-
ployees in the conduct of their business.

On the seventh day of February, 1890, one Sey-
more, an employee of Keith & Perry, brought a wagon
load of coal to defendant's premises and unloaded it
through one of these scuttle holes.    The coal, owing to
the quantity in the basement, backed up in the chute
so that Seymore was required to go into the basement
twice for the purpose of pulling it down.    When he
had completed the work of unloading, the coal extended
up into the opening, so that when the cover was
replaced it rested upon the coal.    The cover was left in
that condition, and within fifteen minutes thereafter
plaintiff walked upon it with the results before stated.

There was also evidence tending to prove that the
cover was not suitable or safe for pedestrians to walk
over.

At the conclusion of all the evidence defendant
prayed that plaintiff be nonsuited on account of the
insufficiency of the evidence.    This request was denied
and the case was submitted to the jury upon instruc-
tions.

Instructions 1 and 2, given at request of plaintiffs,
were as follows:

"2.    The court instructs the jury that even though
you may believe that Seymore did not put the cover in
question back exactly in the place it should have been
put, as defined in other instructions given you at the
instance of defendant, yet if you further believe from

the evidence that the scuttle and cover were negligently constructed and maintained by defendant as defined in other instructions, and that such negligent construction and maintenance of such scuttle and cover directly contributed to the injury of plaintiff complained of, and she was injured thereby while in the exercise of ordinary care, you should find for the plaintiff, Rosalia G. Benjamin."

"1.   The court instructs the jury that no person has the right to use the sidewalk on the street for any private purpose that will render it hazardous or unsafe for foot passengers lawfully passing over the same, and the court instructs the jury that if you believe from the evidence that the defendant owned the real estate on which its power house at the southwest corner of Twelfth and Charlotte streets is situated, and that the defendant maintained and used a scuttle hole in and through the sidewalk on the west side of Charlotte street adjoining said property, and maintained and used such scuttle hole for its private use for the purpose of receiving coal through and under such sidewalk, and had excavated and used for its own a part of the street under such sidewalk, and that the said scuttle hole and cover thereto were negligently constructed and maintained by defendant for the purpose for which they were used, by reason of the same being in an unsafe, insecure, and unfastened condition, so that said sidewalk by reason of such scuttle and cover being placed therein and used by the defendant were rendered hazardous and unsafe for foot passengers who might travel over and along such sidewalk by reason of such scuttle hole and cover being placed therein, and that the plaintiff, Rosalia G. Benjamin, while in the exercise of ordinary care and prudence, fell into such hole and was injured by reason of the same being so negligently constructed and maintained in such an unsafe and inse-

cure condition, then your verdict should be for the plaintiff, Rosalia G. Benjamin.''

The court refused instruction 11 asked by defendant, which was as follows;

"11.  Jurors sometimes after retiring to consider of their verdict (agreeing to be bound thereby) decide . to determine a verdict by lot by each juror marking what amount (if any) plaintiff ought to recover, and dividing the aggregate by twelve.  This the law denominates as a quotient verdict, and is unlawful and improper.  It must not be resorted to under any circumstances.''

I.    The constitutionality of the Kansas City jury law has been declared, since this appeal was taken, by a number of decisions of this court, and a further consideration of that question is unnecessary.

II.    It is insisted by defendant that the evidence was insufficient to support the verdict and judgment, and that the demurrer, offered by it after all the evidence was in, should have been sustained.

The argument to support this proposition is that the cover was negligently replaced by Seymore after using the scuttle hole for unloading the coal for Keith & Perry, who were independent contractors, and for whose negligence it is not responsible; that negligence in improperly placing the cover could only be attributed to defendant when it knew, or by reasonable care could have known, that it had been left in a dangerous condition, and that the injury occurred in so short a period after Seymore replaced the cover that notice to defendant of its condition could not be inferred.

There was no evidence that openings in the sidewalk, such as these, are prohibited by municipal regulation.  On the contrary an ordinance of the city read in evidence, regulating the manner of covering such

holes, necessarily implied authority to maintain them. Their maintenance then was not a nuisance *per se* which made defendant an insurer of their safe condition. The question is one of negligence.

It appeared that Keith and Perry had a contract with defendant to furnish it all the coal necessary for running its machinery; that several wagon loads were unloaded by the employees of the contractors, through these holes, weekly. Defendant did not control the conduct of the business or personally interfere or give directions respecting the manner in which the work of unloading should be done. In the circumstances, the coal company was an independent contractor, and defendant could not be held answerable for the negligent manner in which they performed their contract. If plaintiff had been injured by any negligent act of the contractor in unloading the coal, defendant could not be held liable for the resulting damages. But the exemption only continued while the contractor was engaged in performing its contract.

Defendant was permitted or licensed by the city to maintain these holes for its personal use, and owed the duty to plaintiff and the public, who had the right to use the sidewalk, to exercise reasonable care to keep them in a safe condition. This was a personal duty from which it could not relieve itself by imposing it upon another. As soon as the unloading of a wagon was complete, and the contractor ceased to use the coal hole, the duty of defendant in respect to its condition commenced again.

It must be remembered that defendant furnished to the contractor this means for unloading the coal and knew it was being so used almost daily. The use, as was known, required the removal of the cover and again replacing it. These acts were not done by a wrongdoer without the knowledge of defendant, but

by its consent and under its implied, if not its express, direction.

If defendant had given direction to the contractors in regard to the manner of replacing the cover, then, in that particular, it would have made them their agents, and would have been responsible for their negligence, but, as no direction was given, it was the duty of defendant to give its personal attention to seeing that the cover was properly replaced. They knew the construction of the cover, and that care in replacing it was necessary. They knew, or should have known, that it had been removed and should have seen at once that it had been properly replaced.

The principle is well settled that a city, which authorizes excavations in its streets, is not entitled to notice of the dangerous condition in which they have been left, in order to hold it liable for injury to third persons occasioned thereby. *Russell v. Columbia*, 74 Mo. 490; *Davenport v. Hannibal*, 108 Mo. 477; *Haniford v. Kansas City*, 103 Mo. 181.

It seems to us the same principle applies to defendant in respect to keeping its scuttle hole in a safe condition. It was under obligation to do so. It authorized the removal of the cover, why should it have notice of the condition in which it was left?

That an employer can not relieve himself from a personal duty of this character by committing it to a contractor, seems to me to be a reasonable and just rule. It also has the support of much respectable authority. *Pickard v. Smith*, 10 C. B. (N. S.) 470; *Wilson v. White*, 71 Ga. 510; *Water Co. v. Ware*, 16 Wall. 572; *Woodman v. Railroad*, 149 Mass. 335; *Veazie v. Railroad*, 49 Me. 123; *Darmstaetter v. Moynahan*, 27 Mich. 188.

The case first cited is similar in its facts to this one. Defendant was a lessee of a building under

which he stored his coal through a hole in a public platform, adjacent to the building. This hole was protected by a trapdoor. Defendant employed a coal merchant to furnish and store his coal, and pointed out to him the hole through which it should be stored. He retained no control or power to direct the contractor. While the coal merchant was unloading coal plaintiff, while lawfully passing over the platform, fell into the hole and was injured. After stating the rule of non-liability of the employer for the acts of an independent contractor, WILLIAMS, J., says:

"That rule is, however, inapplicable * * * to cases in which the contractor is intrusted with the performance of a duty incumbent upon his employer, and neglects its fulfillment, whereby an injury is occasioned. Now, in the present case, the defendant employed the coal merchant to open the trap in order to put in the coals; and he trusted him to guard it whilst open, and to close it when the coals were all put in. The act of opening it was the act of the employer, though done through the agency of the coal merchant; and the defendant, having thereby caused danger, was bound to take reasonable means to prevent mischief. The performance of this duty he omitted; and the fact of his having intrusted it to a person who also neglected it, furnishes no excuse, either in good sense or law."

But we are not required to go so far here. For the time being, the contractors had completed their work, and the question is, whether notice of the dangerous condition in which the hole was left, could fairly be inferred by the jury after the lapse of fifteen minutes thereafter. The court held that the question of notice was for the jury, and of this ruling the defendant can not reasonably complain.

III.   The deposition of Frank Seymore was taken by defendant in Chicago, where the witness resided,

and was on file during the progress of the trial.   Defendant offered to read the deposition in support of its defense.   Counsel for plaintiff objected on the ground that they were informed that the witness was then in Kansas City.   No proof having been made of the fact, the court permitted the deposition to be read.   After defendant had closed its evidence and while plaintiff was introducing rebutting evidence, the witness appeared in court.   The court thereupon, on motion of plaintiff, excluded the deposition "for the reason that the witness is present in court."   This ruling of the court is assigned as error.

The rule of practice in this state is well established that, in the absence of agreement or waiver, a deposition can not be read as such, when the witness is present at the trial.   *Chapman v. Kerr,* 80 Mo. 162; *Schmitz v. Railroad,* 119 Mo. 271.

The statute authorizes the deposition of a witness who resides out of the state, as did this one, to be taken and read on the trial.   The decision cited above makes an exception to a case in which the witness is present at the time of trial.   The fact that this witness may have been within the jurisdiction of the process of the court at the time of the trial, did not prevent the reading of the deposition.   If competent when read, we are unable to see that it would have become improper evidence when the witness made his appearance in court, particularly after defendant had closed his evidence.   In making out his defense he had the right to rely upon the deposition when read as evidence.

But we are unable to see that defendant was in the least prejudiced by the ruling of the court.   Defendant was permitted, by way of a cross-examination, to obtain from the witness a full confirmation of the evidence given in the deposition.

Besides, by such examination defendant waived an

exception to the court's ruling. It received the full benefit of the evidence of the witness, and it would be unfair to reverse the case on account of the irregularity by which it was forced to secure it.

IV. Persons experienced in the construction and use of such scuttle holes, and their coverings, were permitted, over defendant's objection, to testify as experts. These witnesses were allowed to answer this hypothetical question:

"Q. State whether or not a scuttle hole which is about twenty-three inches in diameter in the clear, the cover of which is about twenty-four inches in diameter across the top, and which has a flange of a half inch of perpendicular depth, and which has a bearing on the rim on which it rests, varying from three sixteenths to half an inch, which is not fastened down in any way, nor has any appliance by which it can be fastened or secured, and through which scuttle hole it is customary and usual to convey large quantities of coal, and which is used continuously for that purpose from day to day, is in your opinion a reasonably safe and secure scuttle hole for pedestrians passing along and over the same in the sidewalk in which it is situated, considering the purpose for which it is used as aforesaid."

Serious complaint is made of the ruling of the court in this particular.

It is the province of the jurors to draw all inferences and conclusions from the evidence before them. The witnesses, as a general rule, must state facts from which the jurors are to form their opinion. But when the facts are all stated, upon a subject of inquiry, if an ntelligent opinion can not be drawn therefrom by inexperienced persons, such as constitute the ordinary jury, an exception is made to the general rule, and persons who, by experience, observation, or knowledge,

are peculiarly qualified to draw conclusions from such facts, are, for the purpose of aiding the jury, permitted to give their opinion. The exception is allowed from necessity. An expert witness, in a manner, discharges the functions of a juror, and his evidence should never be admitted unless it is clear that the jurors themselves are not capable, from want of experience, or knowledge of the subject, to draw correct conclusions from the facts proved. Expert witnesses are generally selected by the parties from their known opinions on the subject in respect to which they are called to testify, and, therefore, in view of the important functions they perform, their evidence should be admitted with great caution.

These expert witnesses were called upon to give their opinion as to the safety of the covering to pedestrians walking over it, in view of the fact that the hole was used for the purpose of storing coal. This was the ultimate fact the jury was called upon to decide. The evidence showed that, when the cover was carefully placed over the hole, it was perfectly secure, but when particles of coal, or other substances, were permitted to remain on the rim upon which the flange rested, it was liable to turn when stepped upon. No fastening was provided to prevent this result. No good reason appears why the jury, from these facts, was not capable of drawing its own conclusion as to the sufficiency of the coverings in view of purposes for which the hole was used.

But defendant by its own evidence showed that the cover was left resting upon the coal, and did not fit in place as designed. There can, therefore, be no question but that it was insufficient when left in this negligent manner, or, indeed, when left with particles of coal upon the rim. The opinion of the witnesses

then only tended to corroborate the defense that the injury was occasioned by the negligent manner in which Seymore left the cover, and its insufficiency in the position in which it was left to prevent tilting when stepped upon. We do not, therefore, deem the evidence in the least prejudicial in view of the personal duty required of defendant in respect to seeing that the cover was carefully placed over the hole in the manner designed in its construction.

V. The opening lines of instruction 1 given for plaintiffs state the proposition that "no person has the right to use the sidewalk on the street for any private purpose that will render it hazardous or unsafe for foot passengers lawfully passing over the same." It is insisted that this declaration suggests to the jury that defendant had no lawful right to maintain scuttle holes in the sidewalk and should be regarded as an insurer of their safe condition.

Such abstract declarations of law have no proper place in an instruction for the guidance of a jury, and have been often condemned by this court, but, unless clearly misleading, they should not reverse a judgment. We do not think this statement read in connection with what follows could have misled the jury in regard to the question of negligence they were called upon to decide. The hazardous condition of the sidewalk mentioned must have been understood by the jury as referring to a condition they were required to find, in other parts of the instruction, to have existed, in order to create a liability. By an instruction given for defendant the court clearly advised the jury that defendant "had the lawful right to construct and maintain, for its private use, the coal hole in the side walk," and was only required to exercise ordinary care, in all the circumstances, to keep it in a reasonably safe condition. Taking the two declarations together the jury could not

have been misled.   In other respects we do not regard the instruction open to serious criticism.   An instruction might undoubtedly have been drawn so as to present, in a simple form, the questions of fact the jurors were required to pass upon, but, in the haste of a jury trial, the judge ought not to be expected or required to use verbal exactness in his instructions.   If the law of the case is fairly presented appellate courts should not interfere.

VI.   The same may be said in respect to the most of the criticisms of the second instruction given in behalf of plaintiffs.

One criticism of this instruction, however, calls in question the correctness of a legal principle.   The instruction in effect tells the jury that if the injury was caused by the negligent construction of the cover of the scuttle hole directly contributing with the negligence of Seymore in replacing it, defendant would still be responsible for the damage sustained.

A single injury was inflicted upon plaintiff by one cause, namely: the tilting of the cover.   The damage being inseparable each would be jointly or severally liable for the whole damage.   The rule is given by Shearman & Redfield (Neg., sec. 31): "The mere fact that another person concurs or cooperates in producing the injury, or contributes thereto, in any degree, whether large or small, is of no importance.   *   *   *   It is immaterial how many others have been in fault, if the defendant's act was an efficient cause of the injury."

In this particular there was no misdirection of the jury, even assuming, as was done by the trial court, that defendant was not responsible for the negligence of Seymore, until it knew, or, by reasonable care, should have known, thereof.

VII. Complaint is made of the refusal of the court to give the eleventh instruction asked by defendant. In a recent case it was held by this court that the giving of such a cautionary instruction as is here complained of was not error. *Sharp v. Railroad*, 114 Mo. 94. The giving or refusal of such instructions is largely discretionary with the trial judge. He should be allowed to judge of their necessity or utility from the character of the jury and the circumstances surrounding the trial. The refusal of the instruction was not reversible error, particularly as no complaint is made of the amount of the verdict.

Finding no prejudicial error, the judgment of the circuit court is affirmed and the cause is remanded to the Kansas City court of appeals with directions to make the proper order of affirmance. All the judges of this division concur.