[No. 2509. Decided July 12, 1898.]

L. E. GREGORY, *Respondent*, v. U. K. LOOSE, *Appellant.*

PRINCIPAL AND AGENT — IMPLIED AGENCY — EVIDENCE — HEARSAY.

The building of a logging road is not within the scope of authority delegated to an agent, who has been authorized to operate a shingle mill, contract for shingle bolts and conduct preliminary negotiations for rights of way and for the purchase of timber.

Declarations of one assuming to be an agent as to what his principal said or concluded to do respecting a matter in controversy are inadmissible on the ground of being hearsay evidence.

The acts and declarations of an agent are not competent evidence in proof of agency.

Appeal from Superior Court, Snohomish County.—Hon. JOHN C. DENNEY, Judge. Reversed.

*Bell & Austin*, for appellant.

*Headlee & Allen*, and *J. B. Ault*, for respondent.

The opinion of the court was delivered by

ANDERS, J.—On and prior to February 5, 1895, the Riverside Shingle Company was the owner of a shingle mill at Machias, in Snohomish county, and on or about that day it conveyed all of its property, including the shingle mill, to the Snohomish National Bank, in payment of its indebtedness to the bank. The mill was thereafter known and designated as the Riverside Shingle Mill. Soon after the transfer, the bank started up the mill, under the general supervision of appellant Loose, who was the bank's cashier, and proceeded to manufacture shingles from bolts furnished by other parties having them for sale. One R. P. Mathews was employed to operate the mill, with authority to contract for and estimate shingle bolts, subject to the approval of the appellant. In September or October, 1895, said Mathews employed one C. R. Gregory to construct a logging road to some timber which appellant had contracted for, and which was to be cut either by appellant, or his vendors, and removed within five years from the date of the contract, which contract was in writing. Said Gregory, by the direction or consent of Mathews, employed the respondent and several other persons to labor on the road. As superintendent of construction, said Gregory kept the time of the men employed, and on or about October 25, 1895, demanded from Mr. Loose the amount alleged to be due them respectively for their labor. Payment was refused on the ground that the making of the road had not been authorized by appellant, and that neither appellant nor the bank had any knowledge that it was being constructed. This action was thereupon instituted to recover the amount claimed to be due respondent and others, whose claims were assigned to him, for labor performed in the construction of the road.

It is not claimed that either the respondent, or any of

his assignors, was personally requested or authorized by
Mr. Loose to perform the labor for the value of which this
action is waged, but the contention is that Mathews was
appellant's agent to construct the road and, as such agent,
was authorized to bind appellant for the payment for the
labor performed thereon. And it cannot reasonably be
claimed that Mathews's act in authorizing Mr. Gregory to
construct the road was ratified by the appellant, for we
discover no evidence of such ratification in the record. If,
therefore, Mathews was the agent of appellant for the pur-
pose claimed, it was either because appellant held him out
to the public as such agent, or because what he did in that
regard was within the authority which appellant had actu-
ally given him, or within the apparent authority which
he knowingly and without dissent permitted him to as-
sume. 1 Am. & Eng. Enc. Law (2d ed.), pp. 988, 989.

The actual authority, as we have said, which was dele-
gated to Mathews, was authority to operate the Riverside
Shingle Mill and to contract for shingle bolts and estimate
the value thereof, subject to the approval of appellant.
The bolts were paid for, in every instance, by appellant at
the bank and generally, if not always, by checks signed,
" Riverside Shingle Mill, U. K. Loose, Agent." During
Mathews' employment at the mill, he sometimes gave or-
ders on merchants for the delivery of limited quanities of
groceries or other merchandise to men who were fur-
nishing shingle bolts or working in the mill. The amount
of the respective orders was reported to appellant by Math-
ews, and was generally deducted from the sum due to
the person who received the goods and paid to the drawee,
although it appears that, in several instances, such pay-
ment was refused.

Respondent introduced evidence at the trial to the effect
that Mathews negotiated a contract for timber for appel-

lant with certain designated persons, but the contract was finally executed by appellant himself and contained no provision whatever for the building of a logging road; and this, too, notwithstanding the fact that the witness C. R. Gregory testified that Mathews, when negotiating for the timber, said to the vendors thereof, who were insisting that a road should be constructed to it, " We will make the contract with this in, and we will build that road immediately." This is the contract which we mentioned above as providing for the removal of the timber purchased within five years. Evidence was also introduced by respondent to the effect that Mathews made an arrangement with one Eddy for a right of way over his land for a logging road in favor of appellant, and located the same; but, like the timber contract, this contract, which was a lease for a term of five years, was executed by appellant himself—one Packard, as well as said Eddy, being a lessor.

The first and principal question to be determined is, do the facts above set forth, singly or together, warrant the finding that Mathews had the power to bind the appellant by the act of authorizing the building of the road in question? And we are of the opinion that this question must be answered in the negative, for no such power can legitimately be deduced from the facts appearing in the record. It is true that an agency to do a particular thing may be implied from the habits and general course of dealing between the parties, but, in this instance, nothing of the kind could be shown, as no logging road had ever been constructed or authorized by the appellant. It is also true that the authority to act as an agent in a particular business or transaction may often be implied from acts done in the course of the agent's employment in some other business.

" But it is not to be inferred, however, that authority is, in any case, to be implied without reason, or presumed

without cause. The implication must be based upon facts, and cannot arise from any mere argument as to the convenience, utility or propriety of its existence. So, too, the facts from which it is sought to be implied are to be given their natural, legal and legitimate effect, and this effect is not to be expanded or diminished in order to establish or overthrow the agency." Mechem, Agency, § 85. See, also, Story on Agency, § 87; *McAlpin v. Cassidy*, 17 Tex. 449.

But it is well settled in the law of agency that the extent of implied authority is limited to acts of a *like kind* with those from which it is implied, and that an implied power is never extended by construction beyond the obvious purpose for which it is granted. 1 Am. & Eng. Enc. Law (2d ed.) p. 1002; Mechem, Agency, §§ 85, 274, 312; Story, Agency, § 87; *McAlpin v. Cassidy, supra; Graves v. Horton*, 38 Minn. 66 (35 N. W. 568).

Applying these principles, it seems plain to us that the building of a logging road was not within the scope of the authority, real or apparent, delegated to Mathews; for it is an act of an entirely different kind from that of operating a shingle mill, contracting for shingle bolts, or conducting preliminary negotiations for a right of way, or the purchase of a quantity of timber. In our judgment, if it can be inferred from the facts in this case that he was authorized to build the road in question, it might, with equal propriety, be inferred that he was authorized to construct a railroad at the expense of the appellant, for the one is as foreign to his employment as the other. It was the duty of Mr. Gregory to ascertain the extent of Mr. Mathews' authority before engaging in this undertaking, and he had no reasonable excuse for not ascertaining it. *Hurley v. Watson*, 68 Mich. 531 (36 N. W. 726).

He could have ascertained the fact by simply asking a question, but, instead of doing so, he relied upon the acts

and representations of the assumed agent; and he admitted in his testimony, in effect, that in so doing he acted unreasonably and, in fact, foolishly. The testimony also shows that he himself had previously advised the appellant not to build a road .at that time of the year. Giving due weight to all the material evidence in the record, it seems clear to us that there was not sufficient evidence to justify a verdict in favor of the respondent, and the learned trial court therefore erred in not taking the case from the jury, at appellant's request.

It was also error, we think, to permit certain witnesses to testify as to what this supposed agent told them that appellant said or had concluded to do, with respect to this logging road. This was clearly hearsay testimony, and hence not admissible. Nor were the acts and declarations of Mathews competent evidence in proof of agency. *Comegys v. American Lumber Co.*, 8 Wash. 661 (36 Pac. 1087).

Certain portions of the charge of the court to the jury are objected to by appellant, but we perceive no substantial error therein, except in the application of the general principles of law announced to the facts of the case; but it is unnecessary to enter upon a discussion of the several objections raised, as the judgment must be reversed for reasons already indicated.

Reversed and remanded for further proceedings.

SCOTT, C. J., and GORDON and REAVIS, JJ., concur.

DUNBAR, J., dissents.